*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0114p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

TATIANA JOHNS,

*Petitioner,*

*v.*

No. 11-3011

ERIC H. HOLDER, JR.,

*Respondent.*

On Petition for Review of a Final Order of Removal
by the Board of Immigration Appeals.
No. A046 791 561.

Argued: April 19, 2012

Decided and Filed: May 2, 2012

Before: MARTIN, SUTTON and KETHLEDGE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Maris J. Liss, GEORGE P. MANN AND ASSOCIATES, Farmington Hills, Michigan, for Petitioner. Bernard A. Joseph, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Maris J. Liss, George P. Mann, GEORGE P. MANN AND ASSOCIATES, Farmington Hills, Michigan, for Petitioner. Bernard A. Joseph, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

**OPINION**

_____

SUTTON, Circuit Judge. Tatiana Johns, a citizen of Russia, seeks review of a final order of removal issued by the Board of Immigration Appeals. She challenges the Board's refusal to grant a "hardship waiver," which would allow her to stay in the country even though her marriage to Peter Rekshan, an American citizen, ended in

1

divorce.  8 U.S.C. § 1186a(c)(4).  Because we lack jurisdiction to consider the bulk of Johns's challenges to the Board's conclusion that she did not marry Rekshan in good faith, and because her remaining legal challenges to the Board's order lack merit, we deny the petition for review.

I.

Tatiana Johns met Peter Rekshan, 28 years her senior, when he visited St. Petersburg, Russia in 1991.  The two married in October 1998, and Johns moved to the United States one month later.  Under the immigration laws, Johns became a lawful permanent resident on a conditional basis.  8 U.S.C. § 1186a(a)(1).  To remove that status and to stay in the country permanently, Johns was required to submit a joint petition with Rekshan two years after her initial entry swearing that their marriage was legal, that it had not been annulled or terminated, and that they had not married each other for immigration purposes.  *Id*. §§ 1186a(c)(1)(A), (d)(1)(A), (d)(2)(A).  Johns and Rekshan submitted the required joint petition, but they divorced before it could be processed.   The divorce ended Johns's conditional permanent residency, *id.* §§ 1186a(b)(1)(A), (c)(2)(A), potentially subjecting her to removal.

Johns sought a "hardship waiver."  The waiver allows the Attorney General, in his discretion, to grant unconditional permanent residency to an alien whose marriage to a U.S. citizen has ended if the alien demonstrates that the marriage "was entered into in good faith."  *Id*. § 1186a(c)(4)(B).  The Attorney General has delegated his authority to grant hardship waivers to the Board of Immigration Appeals.  *See Kucana v. Holder*, 558 U.S. ___, 130 S. Ct. 827, 832 (2010).  After a hearing, an immigration judge found that Johns had not married Rekshan in good faith but had done so only to enter the United States.  The judge denied Johns's request for a hardship waiver and ordered her removed to Russia.  The Board affirmed.

II.

A provision of the immigration laws "aimed at protecting the Executive's discretion from the courts" constrains our jurisdiction to review certain aspects of the Board's order. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999). The provision divests jurisdiction to review any "decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General." 8 U.S.C. § 1252(a)(2)(B)(ii). At the same time this provision bars judicial review of discretionary decisions, it authorizes review of "constitutional claims or questions of law." *Id.* § 1252(a)(2)(D).

The jurisdiction-stripping provision applies to hardship waivers, which are included in the relevant subchapter of Title 8. *Jebeili v. Holder*, 421 F. App'x 547, 548–49 (6th Cir. 2011). Whether we have jurisdiction to review the Board's order thus turns on which aspects of the decision Johns asks us to review. To the extent she seeks review of a discretionary decision, we lack jurisdiction. To the extent she seeks review of questions of law or constitutional claims, we have jurisdiction.

Johns does not deny that we lack jurisdiction to review the hardship-waiver decision, which the statute vests "in the Attorney General's discretion." 8 U.S.C. § 1186a(c)(4); *Jebeili*, 421 F. App'x at 548–49. She claims instead to be challenging the Board's decision that she is not *eligible* for a waiver because she did not marry Rekshan in good faith. But when it comes to deciding whether an alien is eligible for a waiver, the statute lodges "[t]he determination of what evidence is credible and the weight to be given that evidence . . . within the sole discretion of the Attorney General." 8 U.S.C. § 1186a(c)(4). Although we may evaluate certain questions of law wrapped up in the eligibility determination—whether the Board applied the correct legal test for a good-faith marriage, for example—we do not have jurisdiction to review the Board's assessment of the weight or credibility of the evidence. *See Osei v. Holder*, ___ F. App'x ___, No. 10-4051, 2012 WL 516162, at *1 (6th Cir. Feb. 16, 2012); *see also Iliev v. Holder*, 613 F.3d 1019, 1023–24 (10th Cir. 2010); *Contreras-Salinas v. Holder*, 585 F.3d 710, 715 (2d Cir. 2009); *Alvarado de Rodriguez v. Holder*, 585 F.3d 227, 233–34

(5th Cir. 2009); *Ibrahimi v. Holder*, 566 F.3d 758, 764 (8th Cir. 2009); *Cho v. Gonzales*, 404 F.3d 96, 101–02 (1st Cir. 2005). *But see Oropeza-Wong v. Gonzales*, 406 F.3d 1135, 1146 (9th Cir. 2005) (concluding that Congress intended the provision to function "as a requirement that immigration officials liberally admit evidence, not as a bar to judicial review").

The problem for Johns is that she aims the bulk of her fire not at the legal standards the Board applied but at its assessment of her credibility and the way it weighed the evidence. Consider these arguments: (1) the immigration judge did not fully consider certain pieces of evidence, such as photographs of the couple's seven-year courtship, their joint tax return, her consistent preference for older men and the five months she spent nursing Rekshan back to health after his heart surgery; (2) the immigration judge made a mountain out of a molehill when he discounted her credibility based on her misstatement that Rekshan was twenty-one (rather than twenty-eight) years older than she was; and (3) the Board erred in concluding that the immigration judge's misstatement that she filed for divorce in March 2000 (as opposed to March 2001) was "of limited consequence [because] his decision was not based solely on the timing of the divorce." A.R. 4. All of these arguments challenge the Board's assessment of the weight and credibility of the evidence, matters that the statute commits to the Attorney General's "sole discretion." 8 U.S.C. § 1186a(c)(4). We thus lack jurisdiction to review them. 8 U.S.C. § 1252(a)(2)(B)(ii); *see Osei*, 2012 WL 516162, at *1; *Iliev*, 613 F.3d at 1027.

*Garcia-Morales v. Holder*, 379 F. App'x 431 (6th Cir. 2010), is not to the contrary. Reviewing the Board's refusal to grant cancellation of removal—a discretionary remedy—on the ground that the alien had not shown his daughter would suffer extreme hardship, we noted that "[w]e arguably have jurisdiction to review [a] claim that the . . . Board committed legal error by failing to consider all of the . . . factors" set out in a precedential Board opinion. *Id*. at 434. Whether the Board considered legally prescribed factors is a question of law, while the arguments Johns

makes here target only the Board's assessment of the weight and credibility of the evidence.

*Mendez v. Holder*, 566 F.3d 316 (2d Cir. 2009), adds nothing either. The Second Circuit vacated and remanded the Board's refusal to grant cancellation of removal because it "totally overlooked" and "seriously mischaracterized" several pieces of evidence critical to whether the alien's children would suffer extreme hardship if he were removed. *Id.* at 323. The court concluded that it had jurisdiction to review the alien's arguments because the Board committed "an error of law" by mistreating the factual record in this way. *Id.* But the cancellation-of-removal statute, 8 U.S.C. § 1229b(b), does not vest "[t]he determination of what evidence is credible and the weight to be given that evidence . . . within the sole discretion of the Attorney General," *id.* § 1186a(c)(4), as the hardship-waiver statute does. Even if *Mendez* is correct that some factual errors can be so severe that they become errors of law in the context of cancellation of removal, a point we need not decide, the hardship-waiver provision says that *all* weight-of-the-evidence and credibility questions are committed to the discretion of the Attorney General. *Id.*

All of this leaves a lingering question: if we lack jurisdiction to second guess the Board's assessment of the weight and credibility of the evidence, do we also lack jurisdiction to review whether substantial evidence supports the Board's decision that Johns's marriage was not bona fide? Courts of appeals have long had general authority to review Board decisions for substantial evidence. *See* 8 U.S.C. § 1252(b)(4)(B); *Singh v. Gonzales*, 451 F.3d 400, 403 (6th Cir. 2006). In this instance, although the statute ties our hands with respect to some components of the substantial-evidence assessment, namely the credibility and weight of the evidence, nothing indicates that Congress meant to divest courts of appeals of their longstanding authority to conduct substantial-evidence review. *See Hawaii v. Office of Hawaiian Affairs*, 556 U.S. 163, 175 (2009) ("[R]epeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest."). That explains why we have previously applied substantial-evidence review to the Board's decision that an alien did

not qualify for a hardship waiver because her marriage was not bona fide. *Huang v. Mukasey*, 523 F.3d 640, 649 (6th Cir. 2008). And that explains why other circuits have done the same. *See, e.g.*, *Nguyen v. Mukasey*, 522 F.3d 853, 855 (8th Cir. 2008); *Cho*, 404 F.3d at 101–02. The upshot is that we retain the traditional authority to perform substantial-evidence review; we just must accept the Board's decisions about the weight and credibility of the evidence in doing so. *See* 8 U.S.C. §§ 1186a(c)(4), 1252(a)(2)(B)(ii); *Cho*, 404 F.3d at 102. No doubt, our constraint in second guessing weight and credibility decisions will make it very difficult, if not impossible, to overrule a hardship-waiver decision premised on lack of credibility. But that is not the case when the Board denies a hardship waiver even after accepting the credibility of the witnesses.

In this instance, we have no trouble concluding that substantial evidence supports the Board's decision. As the Board found, Johns had serious credibility problems, bending the truth on several occasions by misstating the couple's age difference by almost a decade and trying to pass off a letter from a department store informing her of a bounced check as evidence of a joint account. The couple also did not have a joint checking account, evidence indicated they were primarily interested in starting a business together, and Johns spent seven months living apart from Rekshan in Russia during their short marriage. Because the evidence does not compel a contrary conclusion, we have no warrant to set aside the Board's decision that Johns and Rekshan did not marry in good faith. *See Huang*, 523 F.3d at 649.

### III.

Johns separately raises three arguments that involve "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D). Although we have jurisdiction to review each of these arguments, *id*., none of them justifies setting aside the Board's order.

Johns first argues that the immigration judge was biased because (1) he mischaracterized some pieces of evidence and overlooked others, and (2) he incorrectly chastised her lawyer for failing to file a brief, then spent just a few minutes reviewing the brief before deciding that nothing in it changed his decision. The judge's treatment

of the evidence alone cannot support a claim of bias.  *See Liteky v. United States*, 510 U.S. 540, 555 (1994); *United States v. Blood*, 435 F.3d 612, 629 (6th Cir. 2006); *Kasa v. Gonzales*, 128 F. App'x 435, 440 (6th Cir. 2005).  And Johns has not shown that the judge's abbreviated consideration of her brief prejudiced her, as she must to prevail on this due-process claim.  *See Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009).  She does not tell us what arguments in her brief were overlooked or how those arguments could have altered the outcome of the proceeding.

Johns next argues that the Board violated its own rules by failing to send her a final version of the immigration judge's decision in a timely manner.  Although Johns received a preliminary copy of the decision before the Board set a briefing schedule, she did not receive a final version, on which the immigration judge had made some minor corrections, until three weeks later.  According to Johns, this delay violated 8 C.F.R. § 1003.5(a), which requires the immigration judge to review and finalize a decision within fourteen days of receiving a request from the Board.  To obtain relief on this score, however, Johns must show not only that the delay violated the Board's rules, but also that she "has been prejudiced on the merits or deprived of substantial rights because of the [Board's] procedural lapses."  *Connor v. U.S. Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983); *see Shewchun v. Holder*, 658 F.3d 557, 570 (6th Cir. 2011).  She points to no discrepancies between the preliminary and final versions of the immigration judge's decision that would have changed the arguments she made before the Board.  *See Garza-Moreno v. Gonzales*, 489 F.3d 239, 241–42 (6th Cir. 2007).  Nor has she cited any authority for the proposition that a brief delay in receiving a final copy of an immigration judge's decision by itself deprives the applicant of "substantial rights."

One last thing, Johns contends:  The Board violated the Paperwork Reduction Act, 44 U.S.C. § 3501 *et seq.*, by sending her two (written) versions of the immigration judge's decision—a preliminary one and a final one three weeks later.  As she sees it, the Board should have sent her only the final, corrected version (at least until the Board distributes all rulings electronically).  We appreciate the goal of reducing the paperwork generated by our legal system, and we will do our part here by dispatching this argument

quickly—and just once.  Because Johns raises this argument "in a perfunctory manner" and makes no "effort at developed argumentation"—she does not identify which provision of the Act the Board supposedly violated, nor does she explain why a paper-generating remand is a useful remedy—we deem the argument forfeited.  *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (internal quotation marks and citation omitted).

IV.

For these reasons, we deny the petition for review.